# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMAR A. GRIFFIN,<br>**Plaintiff**<br><br>v.<br><br>SETH BETANCOURT, *et al.*,<br>**Defendants.** | :<br>:<br>:<br>:<br>:     **CIVIL ACTION NO. 19-CV-4670**<br>:<br>:<br>: |

## MEMORANDUM

**PRATTER, J.**                                          **NOVEMBER**    **, 2019**

This matter comes before the Court by way of a complaint (ECF No. 2), brought by Plaintiff Lamar A. Griffin, proceeding *pro se*. His Complaint raises claims pursuant to 42 U.S.C. § 1983 for deliberate indifference to his need for medical treatment for injuries he sustained in a motor vehicle collision. Also before the Court is Mr. Griffin's Motion for Leave to Proceed *In Forma Pauperis* and Prisoner Trust Fund Account Statement (ECF Nos. 5 & 6). Because it appears that Mr. Griffin is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss Mr. Griffin's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim with the exception of his claims against one defendant. Mr. Griffin will be permitted to file an amended complaint in the event he can cure the defects in his dismissed claims.

## I.     FACTS[1]

Mr. Griffin named two defendants in the caption of the Complaint—Seth Betancourt (identified as a State Police Trooper) and the George W. Hill Correctional Facility ("GWHCF").

---

[1] The facts set forth in this Memorandum are taken from Mr. Griffin's Complaint and documents attached to the Complaint.

On the second page of the Complaint, Mr. Griffin added four different defendants—Jeff Mr. Withelder (identified as a nurse), Dr. Phillips, Nurse Shelly, and Mariel Trimble (also identified as a nurse). The Court will consider all of these individuals and entities to constitute the Defendants in this case for purposes of this Memorandum. Mr. Griffin's claims concern the Defendants' alleged failure to treat injuries he sustained in a vehicular collision shortly before he was arrested and incarcerated.

Mr. Griffin alleges that on March 19, 2019, he lost consciousness while driving and struck several vehicles and signs before coming to a stop. It appears that he was traveling at a speed of 120 miles per hour. Mr. Griffin "hit [his] head on the windshield and was totally delirious." (Compl. ECF No. 2 at 3.)[2] Defendant Betancourt arrested Mr. Griffin, transported him to the police barracks for processing, and thereafter transported him to GWHCF.[3] Mr. Griffin alleges that Trooper Betancourt failed to transport him to a hospital or provide him with medical attention.

When he arrived at GWHCF, Mr. Griffin lost consciousness and collapsed four times. He was housed in the infirmary for three weeks under observation. (*Id.* at 3 & 6.) He also fell unconscious on the day he was released into general population. (*Id.* at 6.) Mr. Mr. Griffin alleges that he wrote request slips complaining of headaches and seeking an MRI or CAT scan. The gist of his claims is that personnel at GWHCF have failed to provide adequate treatment for his head injury.

---

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

[3] Publicly available dockets show that Mr. Griffin was charged in Delaware County with driving under the influence and other offenses stemming from the incident. *See Commonwealth v. Griffin*, CP-23-CR-0005394-2019.

2

In support of his claims, Mr. Griffin attached to the Complaint a log on which he recorded events since his admission to GWHCF, noting dates when he suffered symptoms, when he received medication or other treatment, and when he did not receive treatment. (*Id.* at 10-16.) The day after his admission to GWHCF, he recorded that blood work was done and he was given an EKG. (*Id.* at 10.) He states that he almost passed out on March 29, 2019 and April 2, 2019 and was housed in the infirmary but claims he was not given additional medical treatment on those occasions. (*Id.*)

On April 3, 2019, Defendant Withelder allegedly told him that he was "post-concussive" and represented that Mr. Griffin had been diagnosed with a concussion at Crozer Chester Medical Center and discharged on the date of the collision (although Mr. Griffin disputes that he was ever admitted to that hospital). (*Id.* at 3 & 10.) Mr. Withelder also informed Mr. Griffin that his ears "were heavily wax impacted" and noted that he was without his eye glasses, which may have contributed to him passing out. (*Id.* at 10.) It appears Mr. Withelder ordered two extra strength Tylenol tablets for Mr. Griffin at that time. (*Id.*) Mr. Griffin passed out again the next day; additional blood work was ordered and he was given two extra strength Tylenol tablets. (*Id.*) In early April, Mr. Griffin was regularly given Tylenol, his left ear was flushed, and he was given a course of antibiotics for his ear and tooth. (*Id.* at 10-11.)

Mr. Griffin's medication was discontinued on April 23, 2019. (*Id.*) He submitted a sick call slip and saw Mr. Withelder on April 25, 2019, who prescribed more Tylenol when Mr. Griffin complained of migraines. (*Id.* at 11.) Mr. Griffin did not initially receive that medication, so he submitted a sick call slip, which led to him receiving the medication on May 2, 2019. (*Id.* at 11-12.) Otherwise, he intermittently received medication in May according to his log. Mr. Griffin suggests that Nurse Shelly denied him medication for migraine headaches from

3

May 30, 2019 through June 7, 2019 by virtue of a log entry stating "no meds/migraine headache – refused Tylenol by Nurse Shelly." (*Id.* at 12.) Mr. Griffin also did not regularly receive medication for the rest of June and July, but it is not clear what his symptoms were at that time and who he claims was responsible for the denial, if any, of medication during that time.

Mr. Griffin alleges that on August 4, 2019, he complained of migraine headaches and spotted vision. (*Id.* at 14.) He also made a notation for August 5, 2019 through August 14, 2019 stating "no follow up from Nurse Shelly." (*Id.*) It is not clear if Nurse Shelly is the nurse with whom he spoke on August 4. In the middle of August, Mr. Griffin was treated for constipation.

On August 28, 2019, Mr. Griffin saw Mr. Withelder for headaches, dizziness, and blotchy vision. (*Id.* at 15.) Mr. Withelder "put in for ibuprofen and [for Mr. Griffin] to see Dr. Phillips soon." (*Id.*) The next day, Mr. Griffin received three ibuprofen and saw Dr. Phillips, who "put in for [him] to see [a] neurologist, x-rays for head and neck and eye doctor." (*Id.*) It appears Mr. Griffin received the x-ray of his head and neck on September 5, 2019, and saw the eye doctor on September 6, 2019, but was still awaiting his appointment with the neurologist at the time he filed his Complaint. (*Id.* at 3 & 15.) Mr. Griffin's log indicates that he did not receive medication or see medical personnel from September 7, 2019 through October 1, 2019, and notes that he experienced headaches in mid-September. (*Id.* at 15.) He saw Dr. Phillips again on October 2, 2019 and was diagnosed with arthritis in his neck. (*Id.* at 16.) On October 3, 2019, he signed his Complaint in this case and delivered it to prison authorities for mailing. (*Id.* at 7-8.)

Mr. Griffin alleges that he has not received adequate treatment for his head injury. Specifically, he claims that he has not been "given a thorough head examination" since his admission to GWHCF and that when he complains of headaches he is "charged [a] $5.00

4

medical fee and prescribed ibuprofen/Tylenol for 2/3 days and [he's] on [his] own."[4] (*Id.* at 3.)
Mr. Griffin contends that he continues to suffer from migraine headaches, light-headedness and dizziness, still loses consciousness at times, and cannot stand for more than twenty minutes at a time. (*Id.* at 3 & 10.). He asserts that he has not received any "outside medical attention ~ only inept medical attention from George W. Hill." (*Id.* at 3.) He was also told that he must wait at least one year to see an "outside doctor" and that his headaches are getting worse. (*Id.* at 5.) For relief in this civil action, Mr. Griffin asks to see an "outside doctor" and seeks money damages. (*Id.*)

Mr. Griffin subsequently filed exhibits in support of his Complaint. (ECF No. 7.) That submission indicates that in April and May of 2019, Mr. Griffin filed requests for information and grievances about treatment for his injuries including a request to see a doctor outside GWHCF.

## II. STANDARD OF REVIEW

The Court will grant Mr. Griffin leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. §

---

[4] To the extent Mr. Griffin sought to bring claims based on the fact that he must bear some of the cost of his medical treatment, his claims are dismissed with prejudice for failure to state a claim because the United States Court of Appeals for the Third Circuit has rejected such constitutional challenges. *See Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) ("Although it is possible that the fee-based program at issue here may cause some prisoners to refrain from seeking medical treatment as early as they might otherwise do so, the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); *see also McCabe v. Pennsylvania Dep't of Corr.*, 523 F. App'x 858, 860 (3d Cir. 2013) (per curiam) ("Prisoners are simply not guaranteed the right to be entirely free from the cost-considerations that figure in medical care decisions.").

[5] However, because Mr. Griffin is a prisoner, he will be obligated to pay the $350 filing fee in installments pursuant to 28 U.S.C. § 1915(b).

5

1915(e)(2)(B)(ii) requires the Court to dismiss a complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Mr. Griffin is proceeding *pro se*, so the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

Mr. Griffin's Complaint asserts claims pursuant to 42 U.S.C. § 1983 for deliberate indifference to his medical needs. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[6] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is

---

[6] Mr. Griffin was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims

6

not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *see also King v. Cty. of Gloucester*, 302 F. App'x 92, 97 (3d Cir. 2008) ("Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment.").

### A. Claims Against GWHCF

Mr. Griffin names GWHCF as a defendant in this case. However, "a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Regan*

---

related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to medical-related claims raised by pretrial detainees); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").

7

*v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009). Accordingly, Mr. Griffin's claims against GWHCF must be dismissed because GWHCF "is not a legal entity susceptible to suit." *Cephas v. George W. Hill Corr. Facility*, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).

## B. Claims Against Mariel Trimble

Apart from naming her as a defendant on the second page of his Complaint, Mr. Griffin has not raised any allegations against Defendant Ms. Trimble. He has not explained how she was involved in or responsible for his medical care or what, if anything, she knew about his condition. In the absence of any allegations about Ms. Trimble's involvement in the events in question, Mr. Griffin has failed to state a claim against her.[7]

## C. Claims Against Dr. Phillips

Mr. Griffin has not alleged a plausible claim against Dr. Phillips for deliberate indifference to his serious medical needs. Mr. Griffin's allegations indicate that Dr. Phillips became involved in his care on August 28, 2019, when Mr. Withelder submitted a request for Mr. Griffin to be seen by the doctor. (Compl. ECF No. 2 at 15.) Dr. Phillips saw Mr. Griffin the next day and scheduled him for x-rays, to see a neurologist, and to see an eye doctor. (*Id.*) Mr. Griffin received the x-ray of his head and neck on September 5, 2019 and saw the eye doctor on September 6, 2019. (*Id.* at 3.) Dr. Phillips also saw Mr. Griffin on October 2, 2019 and diagnosed him with arthritis in his neck at that time. (*Id.* at 16.) Mr. Griffin brought his lawsuit

---

[7] Mr. Griffin did, however, attach to his Complaint a copy of a grievance dated April 29, 2019, in which he complained of headaches and stated that he needed a CAT scan or MRI. (Compl. ECF No. 2 at 9.) Ms. Trimble responded that "assessments have not shown clinical indication for ED referral since incarceration" and that Mr. Griffin's "analgesic medication prescription [was] current." (*Id.*) This grievance does not plausibly establish that Ms. Trimble was deliberately indifferent to Mr. Griffin's medical needs.

8

the next day, at which point only five weeks had passed since Dr. Phillips sought a consult from a neurologist.

These allegations do not support a plausible deliberate indifference claim. Rather, they reflect that once Dr. Phillips became aware of Mr. Griffin's injuries on August 28, 2019, he provided some measure of treatment and arranged for appointments with specialists. Mr. Griffin notes that he has not received a CAT scan or an MRI, but that amounts to a disagreement with the course of treatment, not deliberate indifference. *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (per curiam) ("Foye's disagreement about his course of treatment, namely, that an MRI or consult should have been ordered, does not demonstrate that the Medical Defendants were deliberately indifferent to his medical needs."); *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam) ("Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment.'" (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)); *Rhines v. Bledsoe*, 388 F. App'x 225, 227 (3d Cir. 2010) (per curiam) ("Rhines' disagreement about his course of treatment, namely, that an MRI should have been immediately ordered, does not demonstrate the defendants were deliberately indifferent to his medical needs."); *Vasiliades v. Angud*, Civ. A. No. 17-11764, 2018 WL 4516975, at *5 (D.N.J. Sept. 20, 2018) (where "[t]he Amended Complaint and its attachments show[ed] that Plaintiff has received evaluation and treatment for his knee pain at FCI-Fairton" his "disagree[ment] with the use of x-rays and pain medication to evaluate and treat his condition" did not state a deliberate indifference claim). Similarly, Mr. Griffin's desire to see an outside doctor, and his allegation that he was told he would have to wait a year to see an outside doctor, do not amount

9

to deliberate indifference on their own because the desire for an outside doctor appears grounded in a preference for a different course of treatment rather than deliberate indifference. *See Steedley v. McBride*, 446 F. App'x 424, 426 (3d Cir. 2011) (per curiam) (finding that conclusory allegations about cost-saving measures and disagreement with course of treatment insufficient to state a claim).

### D. Claims Against Jeff Withelder

Mr. Griffin has also failed to allege a plausible deliberate indifference claim against Mr. Withelder. Mr. Griffin's log reflects that he saw Mr. Withelder on three occasions: (1) on April 3, 2019 when Mr. Withelder told Mr. Griffin he was post-concussive, prescribed extra-strength Tylenol for his headaches, and told Mr. Griffin that his ears were wax-impacted; (2) on April 25, 2019, when Mr. Withelder prescribed more Tylenol because Mr. Griffin was experiencing a migraine headache; and (3) on August 28, 2019, when Mr. Griffin presented with headaches, dizziness, and blotchy vision, and Mr. Withelder "put in for ibuprofen and [for Mr. Griffin] to see Dr. Phillips soon." (Compl. ECF No. 2 at 10-11 & 15.) On each occasion when Mr. Griffin saw Mr. Withelder, Mr. Withelder prescribed treatment for Mr. Griffin's symptoms. He also facilitated Mr. Griffin's visit with Dr. Phillips.

The facts alleged by Mr. Griffin as to Mr. Withelder's involvement in his care do not support a plausible deliberate indifference claim. To the contrary, Mr. Withelder treated Mr. Griffin and arranged for him to see the doctor. Mr. Griffin notes that Mr. Withelder did not schedule a CAT scan or MRI, but again, that allegation amounts to a disagreement about the course of treatment rather than a basis for a deliberate indifference claim. *See supra* § III.C; *see also Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) ("A prisoner does not have the right 'to choose a specific form of medical treatment'" (quoting *Harrison v. Barkley*, 219 F.3d 132,

10

136 (2d Cir. 2000)). Furthermore, as drafted, the Complaint does not plausibly allege that Mr. Withelder was involved in or responsible for Mr. Griffin's overall medical care, or that he withheld necessary medical treatment at any time since Mr. Griffin was incarcerated at GWHCF.

### E.     Claims Against Nurse Shelly Doe

The basis for Mr. Griffin's claims against Nurse Shelly Doe appear to be based on Mr. Griffin's daily log documenting matters related to his medical care. Those notations, however, are only sentence fragments, so they do not provide much information about the circumstances of Nurse Shelly's involvement in Mr. Griffin's treatment or lack thereof. From May 30, 2019 through June 7, 2019, Mr. Griffin wrote "no meds/migraine headache – refused Tylenol by Nurse Shelly." (Compl. ECF No. 2 at 12.) On August 4, 2019, Mr. Griffin wrote "complained to nurse of migraine headaches and spotted vision"; his log for August 5, 2019 through August 14, 2019, shows the notation "no follow up from Nurse Shelly." (*Id.* at 13.) It is not clear whether the nurse to whom Mr. Griffin complained is, in fact, Nurse Shelly.

These sentence fragments fall short of stating a claim against Nurse Shelly. While Mr. Griffin might be able to proceed if he alleged that he informed Nurse Shelly he was suffering from migraines and other conditions stemming from his head injury and she denied him any care under those circumstances, he does not say as much. His allegations are simply too sparse and undeveloped and require the Court to infer the basis for his claims. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."). In sum, while it is

11

possible that Mr. Griffin can state a claim against Nurse Shelly for deliberate indifference to his serious medical needs, his Complaint falls short of doing so.

### F. Claims Against Trooper Seth Betancourt

Mr. Griffin alleges that he injured his head after being involved in the vehicular collision that led to his arrest. Mr. Griffin alleges that he "hit [his] head on the windshield and was totally delirious" but that Trooper Betancourt did not take him to a hospital or provide him with medical care. (Compl. ECF No. 2 at 3.) At this early stage of the litigation, Mr. Griffin will be permitted to proceed on his claim against Trooper Betancourt.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mr. Griffin leave to proceed *in forma pauperis*. Mr. Griffin's claims against GWHCF are dismissed for failure to state a claim with prejudice because he cannot cure the defects in his claims against GWHCF. His claims against Defendants Mr. Withelder, Phillips, and Nurse Shelly are dismissed without prejudice for failure to state a claim; Mr. Griffin will be permitted to amend those claims because it is possible he could allege a basis for a claim against those Defendants by pleading additional facts about their personal involvement in his medical care. If Mr. Griffin does not file an amended complaint, the Court will direct service only on Defendant Betancourt so that Mr. Griffin may proceed on his claim that Trooper Betancourt was deliberately indifferent to his serious medical needs by failing to provide medical care on the date Mr. Griffin was injured. An Order follows that provides further instruction regarding amendment.

BY THE COURT:

_____
GENE E.K. PRATTER, J.