IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR GRIFFIN,<br>*Plaintiff* | :<br>:<br>: | CIVIL ACTION |
| v. | :<br>: | |
| SETH BETANCOURT,<br>*Defendant* | :<br>: | No. 19-4670 |

## MEMORANDUM

PRATTER, J.                                                                                                         MARCH 11, 2021

Lamar Griffin was driving under the influence of synthetic drugs at the time he caused a four-car pileup on the interstate outside of Philadelphia. The state trooper dispatched to the scene, Defendant Seth Betancourt, determined that Mr. Griffin did not need immediate medical attention, but that, based on his behavior and demeanor, Mr. Griffin was intoxicated. So, Trooper Betancourt transported him directly to the barracks for processing where Mr. Griffin was charged with DUI and hit and run. Mr. Griffin alleges that Trooper Betancourt was deliberately indifferent to his medical needs because he did not immediately transport him to a hospital.[1]

For the reasons that follow, the Court grants defendant's motion for summary judgment. Although it is possible that a layperson may have found Mr. Griffin's erratic behavior warranted medical attention, there is no evidence that Trooper Betancourt was deliberately indifferent. Moreover, Mr. Griffin has not produced any competent medical evidence, other than self-serving declarations, that he in fact suffered any injury.

---

[1] The Court previously dismissed claims against the George W. Hill Correctional Facility and four medical providers at that facility by which Mr. Griffin had also alleged a failure to provide medical treatment. *Griffin v. Betancourt*, No. 19-CV-4670, 2019 WL 5901497 (E.D. Pa. Nov. 8, 2019).

## BACKGROUND AND PROCEDURAL HISTORY

On an otherwise uneventful Tuesday afternoon, Mr. Griffin smoked some PCP and then went out for a drive. Doc. No. 20-1 (PSP Incident Report) at 9; Doc. No. 20-6 (Griffin Medical Records) at 10. He headed southbound on Interstate 95. At one point, he was reported to be traveling over 120 miles per hour and swerving in and out of traffic. Doc. No. 20-2 (Affidavit of Probable Cause), Doc. No. 20-4 (Griffin Depo. Tr.) at 63:10-11. Mr. Griffin then hit a few PennDot signs, a guardrail, and four other cars.[2] Doc. No. 20-2. His sedan was no longer drivable, Doc. No. 20-3 (Police Crash Report) at 11, Doc. No. 20-4 at 31:6-8, but Mr. Griffin was able to extricate himself from the vehicle before attempting to flee using a witness's vehicle, Doc. No. 20-1 (PSP Incident Report) at 8. Mr. Griffin's air bag did not deploy and he was belted in at the time of impact. Doc. No. 20-3 at 6.

In response to reports of an erratic driver on the loose, State Trooper Seth Betancourt was dispatched to the scene. Doc. No. 20-1 (PSP Incident Report). He arrived shortly after the multi-car accident. It is undisputed that Mr. Griffin was having trouble standing and that he appeared incoherent and was slurring his speech. Doc. No. 20-1 at 6-7; Doc. No. 20-4 at 36:13-14. Mr. Griffin testified that he was not in pain at the time and did not see any blood on himself. Doc. No. 20-4 at 29:2-7, 42:13-17.

Some of the victims involved in the crash were taken to a local medical center. Doc. No. 20-1 at 8. These individuals were thought to have minor injuries. Mr. Griffin was not given EMS transport. Doc. No. 24 at 11-12. Trooper Betancourt assessed Mr. Griffin at the scene and determined that he was not injured from the crash. Mr. Griffin did not dispute this characterization. Doc. No. 20-4 at 35: 13-17 ("Q. Okay. The police report states that you were not injured as a result

---

[2] Another crash report found that Mr. Griffin damages as many as six vehicles. Doc. No. 20-1 at 10.

of this accident. Do you have any reason to believe that that's—was not an accurate assessment? A. No."). Instead, Trooper Betancourt determined that Mr. Griffin presented mere symptoms of intoxication and could not safely operate a vehicle.

Trooper Betancourt transported Mr. Griffin in his patrol car to the Media Barracks for processing. His police report notes that Mr. Griffin admitted to smoking PCP and KT and he exhibited behavior consistent with someone under the influence, including paranoia. Doc. No. 20-1 at 9. Likewise, the medical examination conducted the next day at the correctional facility corroborates that Mr. Griffin admitted to smoking PCP once a week, including on the day of the crash. Doc. No. 20-6 at 10.[3] Despite these contemporaneous records, Mr. Griffin later denied during his deposition that he was on drugs at the time of the crash. Doc. No. 20-4 at 24:7-17. Due to the circumstances of the crash, Trooper Betancourt was unable to conduct a field sobriety test, and Mr. Griffin refused a chemical blood test at the station.

Once processed, Mr. Griffin was placed in a holding cell. The police report notes that he began performing jumping jacks in his cell while yelling "man or mouse." Doc. No. 20-1. Mr. Griffin has no recollection of these events. Doc No. 20-4 at 50:1-6.

There is a dispute as to whether Mr. Griffin had in fact injured his head. In his deposition, Mr. Griffin stated that he had a bruise on his head, which he attributes to hitting his head on his car's windshield. Doc. No. 20-4 at 35:1-6. However, the booking photo taken roughly 90 minutes after the crash shows no sign of bruising or laceration around where Mr. Griffin alleges he was injured. Doc. No. 25-1. Moreover, the medical examination conducted the next day at the correctional facility noted that his head was "atraumatic" and "Normocephalic." Doc. No. 20-6 at

---

[3] A subsequent search of Mr. Griffin's car uncovered a substance later tested to be a synthetic cannabinoid. Doc. No. 20-5 (Drug Identification Lab Results).

14. The examining doctor did not note any bruising on his head and "approved [him] for general population." *Id.* at 12, 14. Mr. Griffin does not recall undergoing this examination. Doc. No. 20-4 at 53:6-8. He claims he was later admitted to the facility's infirmary in the following weeks because he passed out a few times and that a nurse described him as "post-concussive." Doc. No. 20-4 at 54:13-18. Mr. Griffin does not attach any medical records or other evidence diagnosing him as concussed.[4]

Trooper Betancourt moves for summary judgment on the sole claim against him. Doc. No. 20. Rather than respond to the motion, Mr. Griffin instead filed a cross-motion for summary judgment. Doc. No. 24. He then filed an identical copy of his cross-motion. Doc. No. 26. Mr. Griffin's filings are, in essence and substance, a response to Trooper Betancourt's motion.

### LEGAL STANDARD

A court can properly grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to

---

[4] In response to the intake psychiatric screening questions asking about Mr. Griffin's "History of cerebral trauma or seizures," he answered, "Yes- concussion yesterday." Doc. No. 20-6. However, this appears to be Mr. Griffin's own answer to the question rather than a diagnosis from the examining medical professional.
  Mr. Griffin represents in his motion that he requested copies of his medical records but was ignored "due to [his] inmate status and coronavirus taking precedence over everything." Doc. No. 24 at 9.

4

overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I. Deliberate Indifference to Mr. Griffin's Medical Needs

Mr. Griffin brings a § 1983 claim based on Trooper Betancourt's alleged failure to provide medical care to Mr. Griffin at the time of his arrest.[5] A prima facie § 1983 claim requires a plaintiff to establish that he was deprived of a federal right and the person who deprived him of that right

---

[5] Although most denial of medical treatment claims arise in the context of prison officials denying care, district courts within this Circuit have repeatedly recognized that a police officer's failure to provide adequate medical care can also give rise to liability under § 1983. *See Klein*, 374 F. Supp. 3d at 422 n. 27 (collecting cases).

5

was acting under the color of state or territorial law. Failure to provide medical treatment can rise to the level of a constitutional violation "only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). To meet the deliberate indifference standard, the plaintiff must prove (1) his medical needs were serious and (2) that the state officers were deliberately indifferent to those needs.

Because Mr. Griffin was a pretrial detainee at the time, his rights arise under the Fourteenth Amendment instead of the Eighth Amendment. *Klein v. Madison*, 374 F. Supp. 3d 389, 423 (E.D. Pa. 2019). For analytic purposes, the rights are at a minimum the same under both amendments. Accordingly, the Court can look to decisions interpreting the Eighth Amendment as "useful analogies" for those cases arising under the Fourteenth Amendment. *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) (internal quotation omitted).

### A. Whether Mr. Griffin's Injury Was Objectively Serious

First, in the consideration of Mr. Griffin's claim, there must be evidence that Mr. Griffin had an "objectively serious medical need." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987). A "serious" medical need is one "that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* There is no competent evidence that Mr. Griffin was ever diagnosed as having a concussion.[6] So, the question here is whether, following the car crash, Mr.

---

[6] Mr. Griffin testified in his deposition that a nurse at the correctional facility described him as "post-concussive" after he fell a few days after the car crash. Doc. No. 20-4 at 56:3-6. Mr. Griffin offers the nurse's statement for the truth of the matter asserted. But this statement does not meet any of the applicable hearsay exceptions. "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693–94 (3d Cir. 2009). Because the nurse's alleged statement is inadmissible hearsay, the Court does not consider it as evidence here.

6

Griffin's outside signs of injury and the circumstances that Trooper Betancourt found him were so obvious that Trooper Betancourt should have been on notice as to the severity of Mr. Griffin's condition.

Within the Third Circuit, a serious medical need is one for which lack of treatment will lead to substantial suffering, injury, or death. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1012 (3d Cir. 1991). However, there is no "20-20 hindsight" test to be applied. Evidence of gunshot wounds, for example, is an easy case of an obvious medical need. At the other end of the spectrum, athlete's foot and swollen knuckles are not. *Klein*, 374 F. Supp. 3d at 424 (collecting cases).

There is no established rule that a concussion not otherwise observable to a lay person necessarily constitutes a "serious medical need" for purposes of this objective prong. *See, e.g.*, *Jones v. Lewis*, 874 F.2d 1125(6th Cir.1989) (mild concussion and broken jaw not serious medical needs). In *Shoop v. Dauphin County*, for example, the court found that plaintiff's injuries were not were not obvious to a layman as requiring immediate medical attention. 766 F. Supp. 1327, 1331 (M.D. Pa.), *aff'd*, 945 F.2d 396 (3d Cir. 1991). Although the plaintiff was diagnosed as having a mild concussion, the court noted in dicta that the injury was not obvious "absent some other outward indicia, such as nausea or disorientation." *Id.*

At the site of the initial events, Trooper Betancourt concluded that Mr. Griffin's behavior and demeanor were not attributable to any injury but rather were symptomatic of mere drug use. The challenge that develops here is that outward signs of a concussion—slurred speech and difficulty standing and walking—are also signs of using PCP, a drug with sedative and anesthetic effects, which Mr. Griffin later admitted to using. At the time Trooper Betancourt decided to arrest Mr. Griffin, he was relying on his observations of Mr. Griffin. Doc. No. 20 ¶ 5. Once Mr. Griffin was already in the patrol car on his way to processing at the PSP Media Barracks, he admitted to

7

having used drugs. Moreover, other officers dispatched to the scene of the car crash searched, recovered, and tested the drugs found in Mr. Griffin's car after Trooper Betancourt had arrested Mr. Griffin.

The surrounding circumstances may suggest that it could have been best practice to have transported Mr. Griffin for a medical evaluation. It is undisputed that the car accident involved sudden deceleration, forceful enough to render the front of his car severely damaged. Both parties noted Mr. Griffin was at one point traveling upwards of 120 miles per hour before the crash, though the trooper had not witnessed this speed, and Mr. Griffin testified that he was driving 57 miles at the time he crashed. Doc. No. 20-4 at 63:18-23. There was no visible head injury, Mr. Griffin's car's airbag did not deploy, and Mr. Griffin attempted to flee using another car. By the same token, it is also undisputed that Mr. Griffin was incoherent, slurring his speech, and had trouble standing. Doc. No. 20 (Betancourt SUMF) ¶ 4. He reportedly did not know what had just happened, he asked Trooper Betancourt repeatedly why he was in the car, and even denied being involved in an accident. Doc. No. 20-1 at 9.

Even if Trooper Betancourt's determination that Mr. Griffin was intoxicated was correct—which appears to be the case—it may be difficult, after the fact, to attribute all of his conduct as due to his intoxicated state. The Court appreciates that concussions and other cerebral trauma are not necessarily accompanied by obvious external bruising so the lack of blood on Mr. Griffin does not carry much weight. Perhaps the undisputed evidence—at the time of the accident—does not conclusively rule out that Mr. Griffin may have needed medical attention at the time. *Compare Mattern v. City of Sea Isle*, 657 F. App'x 134, 139-40 (3d Cir. 2016) (medical need was not obvious where detainee made "small talk" with detective and was able to recount the accident in detail) *and Grayson v. Ross*, 454 F.3d 802, 809 (8th Cir. 2006) (medical need was not obvious when

8

detainee, although intoxicated, "calmly in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail") *with Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (plaintiff, who had just been in a car accident and was intoxicated, demonstrated obvious medical need when he "could not follow simple instructions or answer basic questions; he was unable to stand without assistance and fell during the booking procedure").

Viewing the record in the light most favorable to Mr. Griffin, the evidence concerning a possible head injury presents a genuine issue of material fact as to whether Mr. Griffin had a serious medical need *at that time* that would be obvious to a layperson. To be sure, there is no expert medical testimony in the record to resolve this question. Mr. Griffin has barely submitted any evidence (other than his own deposition). Then, again, Mr. Griffin is proceeding *pro se*.

But this is not the end of the Court's inquiry. The Court must still consider whether there is evidence to establish that the trooper was deliberately indifferent to Mr. Griffin.

### B. Whether Trooper Betancourt Acted with Deliberate Indifference

As to the second element, to survive summary judgment, Mr. Griffin must provide evidence that would show that Trooper Betancourt knew, or should have known, of his serious medical need and was nevertheless deliberately indifferent to it. This is a "subjective standard of liability." And, it requires a "more culpable state of mind" beyond mere negligence. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has held that it "requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Baez v. Falor*, 566 F. App'x 155, 158 (3d Cir. 2014). Even where the defendant knew the underlying facts but believed (albeit incorrectly) that the risk was insubstantial or nonexistent, he will not be liable. *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014)

9

(citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). So, the Court must focus on "what a defendant's mental attitude actually was (or is) rather than what it should have been (or should be)." *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997).

Although it is undisputed that Mr. Griffin was not immediately transported to a hospital, it is also undisputed that was because Trooper Betancourt believed that Mr. Griffin's behavior was due to his intoxicated state, rather than an injury. Trooper Betancourt did not believe that Mr. Griffin required emergency medical treatment. Trooper Betancourt contends summary judgment is warranted because Mr. Griffin "has not offered any evidence at all . . . that would substantiate his claim that he suffered a concussion or that Trooper Betancourt knew that [he] suffered a concussion." Doc. No. 20 at 11.

With a summary judgment challenge, Trooper Betancourt can meet his burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The Third Circuit Court of Appeals has affirmed grants of summary judgment to defendants on deliberate indifference to medical needs claims when the plaintiff has failed to produce any evidence to support his claim. *Boring v. Kozakiewicz*, 833 F.2d 468, 473–74 (3d Cir. 1987); *see also Hakeem v. Salaam*, 260 F. App'x 432, 434–35 (3d Cir. 2008) ("Although Hakeem claims that his repeated complaints of throat pain went completely ignored, he cannot rest upon mere unsupported allegations when faced with a motion for summary judgment."). District courts in this Circuit have followed suit. *See Coleman v. Schneider*, No. CV153539FLWLHG, 2018 WL 2980393, at *7 (D.N.J. June 14, 2018) (granting summary judgment where plaintiff did not submit any medical evidence of a serious medical need); *Coleman v. City of Long Branch*, No. CV157314FLWLHG, 2018 WL 4027033, at *9 (D.N.J. Aug. 22, 2018) (same); *Anderson v. Folino,* No. 10–937, 2013 WL 598569 (W.D. Pa. Jan 23, 2013) (same).

Mr. Griffin was not denied medical treatment. To the contrary, he underwent a medical evaluation within 24 hours of the crash so that he could be cleared to enter the correctional facility. Indeed, there is no evidence from any medical professional that Mr. Griffin did in fact suffer a concussion. Rather, the medical records describe his head as "atraumatic" and "normocephalic." The exam was unremarkable and there is no notating any external injuries (including the lesion that Mr. Griffin alleged he suffered). Similarly, there is no evidence that Mr. Griffin requested medical care from Trooper Betancourt, which the trooper then denied.

Absent any evidence of Trooper Betancourt's culpable state of mind, there is no evidence in the record that would permit a jury to find that he knew of and intentionally disregarded a serious risk to Mr. Griffin's health. At most, Trooper Betancourt believed that Mr. Griffin's demeanor was attributable to his intoxicated state.

## II. Qualified Immunity

Trooper Betancourt also asserts the affirmative defense of qualified immunity. He argues that he is entitled to this defense on the grounds that Mr. Griffin has not asserted a prima facie case of a constitutional violation.

Trooper Betancourt is shielded by this doctrine if his conduct "does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Whether qualified immunity applies proceeds via a two-step inquiry: first, did the defendant's conduct violate a statutory or constitutional right and second, was the right at issue clearly established at the time. *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). A "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane*

11

*v. Barger,* 902 F.3d 185, 194 (3d Cir. 2018). The "right need only have a sufficiently clear foundation in then-existing precedent"; directly on-point case law is not required. *Id.*

For the reasons already discussed, Trooper Betancourt's conduct did not violate Mr. Griffin's constitutional rights. Because there is no constitutional violation, the qualified immunity inquiry concludes at the first step. *Haefner v. City of Phila.*, 2005 WL 525404, at *2 (E.D. Pa. Mar. 4, 2005).

## CONCLUSION

For the reasons set out in this memorandum, the Court grants the defense motion for summary judgment and denies Mr. Griffin's motions for summary judgment. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE